CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
4/23/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No.: 5:11cr005 |
| | ) | |
| v. | ) | |
| | ) | |
| BACH TUYET TRAN, | ) | By: Hon. Michael F. Urbanski |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

**ORDER**

This matter is before the court on the issue whether the court has any power or jurisdiction to undertake further efforts to secure the return of Bach Tran's stolen money. The short answer is no. Despite this conclusion, the court remains distressed by the theft of nearly one-half million dollars from Tran in an Internet fraud scheme. After appointing counsel for Tran, conducting an evidentiary hearing, requiring additional responses from the government and Tran's former counsel, Christopher E. Brown, the court has hit a jurisdictional dead-end and can discern no basis authorizing it to proceed further.

I.

The procedural history of this unfortunate saga is set out in detail in the court's prior Orders of December 7, 2018, ECF No. 221, August 12, 2019, ECF No. 234, and December 17, 2019, ECF No. 238, and the transcript of the April 18, 2019 evidentiary hearing, ECF No. 232, and need not be repeated here.

This Order considers the responses by the United States Attorney and Tran's former counsel to the court's request for further information set forth in its December 17, 2019 Order.

1. <u>Response from the United States Attorney.</u>

On January 16, 2020, Zachary T. Lee, Criminal Division Chair for the Western District of Virginia's United States Attorney's Office, responded to the court's December 17, 2019 Order. The U.S. Attorney's letter provided a fulsome summary of the investigation into Tran's stolen funds, including efforts to identify the "individual believed to have received Tran's stolen funds when they were wired from attorney Brown's escrow account to Chase Bank in New York." U.S. Attorney's Response, ECF No. 245, at 1. The U.S. Attorney stated that the funds were wired by Brown into an account held in the name of a "money mule" utilized by a large business email compromise (BEC) fraud network. <u>Id.</u> at 2.

The U.S. Attorney also reported on convictions obtained in the United States District Court for the Southern District of New York against several individuals involved in "the fraudulent scheme believed to be associated with Tran's loss of funds." <u>Id.</u> Although restitution was ordered in those cases, the U.S. Attorney reported that "at the time of sentencing these defendants were indigent and while certain funds from these defendants' bank accounts were transferred directly back to named victims in their respective cases, no additional restitution payments were expected nor were any funds received pursuant to the money judgments." <u>Id.</u> The U.S. Attorney also noted that the victim-witness coordinator in his office was "working to facilitate discussions between Tran and both the FBI victim-witness coordinator and the SDNY U.S. Attorney's Office victim-witness coordinator to determine

what rights she may have to the restitution ordered, and to explore whether or not remission of any funds ordered forfeited by [those defendants] is available, pursuant to 28 C.F.R. § 9.8." Id. at 3.

In response to a separate inquiry from the court as to further investigation into emails surrounding the fund transfer, the U.S. Attorney reported that to his "knowledge, no additional investigation has been conducted by FBI New York regarding the specific emails exchanged between Tran, Christopher Brown, Trey Taylor, Rocco Deleonardis, and winchjule@yahoo.com, even though those email addresses have been provided to FBI New York by Special Agent Duke as potential investigative leads." Id. at 2-3.

On the issue of the deduction of the $13,900 in mandatory special assessments owed, the U.S. Attorney reported that "it does not appear that the parties contemplated the special assessment owed by Tran when the [settlement] agreement was drafted." Id.

The letter from the U.S. Attorney closed as follows:

> The United States Attorney's Office laments the unfortunate set of circumstances that have befallen Ms. Tran and has attempted to seek justice in this matter and facilitate investigations by the FBI and our counterparts in the EDNY and SDNY. Unfortunately, jurisdictional and legal impediments prevent the United States Attorney's Office for the Western District of Virginia from taking a more active role in the investigation and prosecution of the fraud committed. As I become aware, I will continue to keep the court informed as to any new developments that arise in the investigation of the loss of Ms. Tran's funds.

Id.

The court appreciates the efforts made by the United States Attorney to get to the bottom of the theft of Tran's money. The investigation of Tran's stolen money is in the hands

of law enforcement authorities in New York, and, absent a lawsuit filed in this district, the court can discern no basis for any further action by this court.

2. <u>Response from Christopher E. Brown, Esq.</u>

In its December 17, 2019 Order, the court asked former counsel for Tran, Christopher E. Brown, about two issues: (1) the retention by Brown's firm of $38,000 in legal fees; and (2) the subtraction of $13,900 in mandatory special assessments unpaid by Tran.

On the issue of the retained contingent fee, the court's December 17, 2019 Order inquired as follows.

> First, given the mistake by Brown's firm in wiring the balance of Tran's funds based on wiring instructions from a fraudulent email address, it is difficult to discern how Brown's firm, as a matter of equity, could retain those funds. In that regard, the court does not know whether the Contingent Fee Agreement between Brown and Tran authorizes Brown to retain a contingent fee under circumstances where it is undisputed that his client has received nothing.

Order, ECF No. 238, at 2. Brown's response of January 17, 2020 enclosed his Fee Agreement with Tran and stated that "the contingency fee 'is payable immediately upon receipt of the recovered funds.' Contractually the funds were due and owing upon receipt, and thus were retained." Brown Response, ECF No. 240, at 1.

Of course, Brown's response begs the question of receipt by whom. Under this fee agreement, is the seven percent contingency fee payable upon receipt of the monies by Tran, or is receipt of the monies by Brown sufficient as his letter asserts?

Finally, on the issue of the deduction of the unpaid mandatory special assessment in the criminal judgment, Brown's response noted that the government was claiming a right to retain those funds and concluded:

4

> The $13,000.00 assessment payment seemed a bit more unusual, but the fight over it seemed not worth it in light of what we were able to get the government to agree to return. For those reasons, yes, it was the understanding of the undersigned that the government would be reducing the amount of its wire of the funds by the amount stated in Ex. B.

Brown Response, ECF No. 240 at 2-3. As such, it does not appear that there is any basis for Tran to claim that the government wrongfully withheld the unpaid $13,900 mandatory special assessment.

## II.

Given these responses, the court must consider whether it has jurisdiction to decide the question of whether Brown is legally entitled to retain the $38,000 contingency fee when his client got nothing. In sum, the court is constrained to conclude that it does not have jurisdiction to resolve what is essentially a state law contractual dispute. No suit has been brought by Tran against Brown in this court. Even had Tran done so, as to the dispute over the $38,000 contingency fee, the court can discern no basis for subject matter jurisdiction, either involving a federal question or diversity of citizenship.

The court has considered the question as to whether it has jurisdiction to resolve this fee dispute under its authority to resolve matters ancillary to its jurisdiction in the federal criminal case. Federal courts are courts of limited jurisdiction. They "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The doctrine of ancillary jurisdiction recognizes that in some circumstances federal courts have inherent authority to resolve disputes even absent an express statutory grant of jurisdiction. "Kokkonen explained that ancillary jurisdiction exists for 'two separate, though sometimes related,

purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" United States v. Mettetal, 714 F. App'x 230, 233 (4th Cir. 2017) (quoting Kokkonen, 511 U.S. at 379-380).

In Kokkonen, the parties to an agreement to settle a federal court lawsuit sought to invoke the court's jurisdiction over a subsequent dispute concerning one party's obligation to return certain files under the settlement agreement. The Supreme Court held that the federal court lacked jurisdiction to resolve a dispute over the settlement agreement, reasoning as follows:

> The short of the matter is this: The suit involves a claim for breach of contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute. The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the federal court business.

511 U.S. at 381. The same is true here. The only arguable basis for the exercise of ancillary jurisdiction of a fee dispute between Tran and Brown falls under the second Kokkonen prong, to vindicate the court's authority and effectuate its decrees. But the October 17, 2016 Agreed Order Relinquishing Funds Forfeited in Excess of the Forfeiture Monetary Judgment required only that "[t]he sum of $543,196.06 shall be relinquished to counsel, on behalf of defendant, within 30 days of entry of this Order." ECF No. 209, at 4. The United States wired the money to Brown as ordered, Brown deducted his contingent fee and attempted to wire the money to Tran, only to have it stolen by criminals employing a BEC fraud scheme. Resolution of the

6

separate issue of the fee agreement between Tran and Brown is neither necessary to vindicate the court's authority or effectuate its decrees. As was the breach of the settlement agreement in Kokkonen, whether Brown's retention of the contingent fee under these circumstances is consistent with his Fee Agreement with Tran is a matter of state contract law to be resolved by a Virginia state court.

### III.

In sum, having thoroughly vetted this issue by appointing counsel, holding an evidentiary hearing and requiring further responses from the government and Brown, the court concludes that it lacks jurisdiction to undertake any further inquiry into this matter. After Brown wired Tran's money to the Chase Bank in New York, it disappeared. It is the obligation of law enforcement authorities in New York to do what they can to recover those lost funds. As to the legal consequences of the attorney-client relationship between Tran and Brown, that is a matter of state law beyond the federal jurisdiction of this court. However regrettable it may be, there is simply nothing further that the court can do on this matter.

The Clerk is directed to docket this Order and email a copy to Tran at winchjulie@yahoo.com.

ENTERED: April 22, 2020.

Michael F. Urbanski
CHIEF U.S. DISTRICT JUDGE